May it please the Court. My name is David Abney. I'm here today with Glenn Gilcrease. We represent the appellants. Thank you very much for allowing us to have an oral argument. Much of this case depends upon a declaration that my client has been providing to new customers since the original injunction was entered. And the declaration says that I also acknowledge that this is a business-to-business call that deals with the businesses I own or owned that has resulted in the purchase of these do-it-yourself business recovery kits. Mr. Abney, it might help to review for a second the procedural status of this case. There was a motion for a preliminary injunction by the government against you. At that time, you didn't oppose the preliminary injunction, and you didn't raise the business-to-business exception argument. Maybe you didn't have the declaration signed at that time. And that preliminary injunction was entered, and preliminary injunctions, as you know, are subject to appeals. You didn't appeal that. It was only after there was a contempt proceeding brought that you sought a modification of the preliminary injunction. Now, at the time of the modification for a preliminary injunction, you raised the business-to-business exception, but you hadn't raised it earlier. There's no reason in the world that I can see why you didn't raise it earlier, and, therefore, I don't see any reason in the world why you should have an appeal from the denial of the modification of the injunction. Well, motions to modify are appealable if they are denied. After the original injunction, we did change a fundamental business practice. This declaration was a new thing aimed to make it crystal clear. No, no, no, no, no, no. You changed a business practice. That doesn't change the law that existed at the time of the preliminary injunction. Yes, Your Honor. And it doesn't change the facts that existed at the time of the preliminary injunction. Yes, Your Honor. Some might say you procured new evidence. Some might say you manufactured new evidence. It doesn't make any difference. You got new evidence. Some would be wrong about that. Some would be wrong. But what we did was we changed a business practice to try to make it crystal clear, and so there would be no misunderstanding as to what we were doing as far as marketing the business. My point is I'd like you to tell me why the Court was not within its discretion in saying on the motion to modify the injunction that you had no change in facts or change in law, which you couldn't have brought as a defense to the original injunction. Well, when the original injunction came out, we did not have this declaration. All right. So that is a fundamental change. So you think that providing and procuring or manufacturing evidence makes a fundamental change so that it would require a modification of the injunction. That's your point. Well, verbal adjectives have certain weight. When you start saying providing, procuring, or manufacturing, then there is a judgment behind those verbs that we are doing something wrong. No, no, no. I'm a great proponent of manufacturing, and if you can get evidence through diligence and energy and initiative, I think it's to be commended. There's nothing wrong with that. But the point I'm trying to determine is if you didn't raise the business-to-business exception in defense of the government's motion for preliminary injunction, then you lost your chance. You can't bring it up on a motion to modify, can you? Yes, because when there is a change in the facts, then you may seek a modification of an injunction based on a change in the facts. Are you telling us that before you got the declarations, you were actually doing person-to-person telephone calls? No, we were not. Oh, I didn't think you would. No. That's why I was focusing on the verbal adjectives, the manufacturing, creating, and so forth. What we did was we changed a fundamental fact about how we were operating, and that provides the evidence. We're not manufacturing the evidence. We're changing practice. Let me ask you this. Before the declarations were filed, you were making telephone calls to persons to offer them the kits, correct? We were marketing to businesses even before. But you were marketing to businesses before the declarations were executed, in the same way as you did after the declarations were executed, except now you had some documentation as to what you were doing. I'm glad you added the exception, but it's not just documentation. It is actually making it crystal clear to the customer that if you're not a business, we're not selling this to you. This is to go to a business to a ñ and, in fact, the last sentence I almost got to in the declaration was, during this call I'm operating as the head of my business entity. So we were marketing to the business entity and making it crystal clear in the transaction that, yes, this is indeed a business-to-business transaction. Let me ask a question about that. The government says that BRS called the consumers on their personal phone numbers and charged their personal credit cards. You state in your opening brief that BRS called the consumers' business telephone number. Which is it? Often they're the same. For instance, my cell number is my business number and is my crystal number. What proportion would you say was the same? Pardon me, Your Honor? What proportion of those numbers were the personal numbers the same as the, I put in quotes, business numbers? Most of the home-based businesses use one number. It would be their personal number and their business number. It would be the business number they list on their website. Over 90 percent of them? I can't give you a percentage, Your Honor. What I'm talking about, you said there's a change in the facts. Yes, Your Honor. It appears you're making the same telephone calls, but now you're calling them business calls. No, not just calling business calls. We're trying to make crystal clear that we are dealing with businesses. And so we say to the customer essentially what this declaration says along with the speech that goes with it. Are you a business? We have business recovery kits. We are business recovery services. And if you are a business, we will sell you this business recovery kit. Are you a business? Please confirm it in writing. Counsel, Judge Gould, if I could interject a question. And I realize you're being peppered with lots of questions, but I can tell you I have a broad advocate shoulder, so I hope you won't mind this. How can you sensibly apply a business-to-business exemption to people whose prior scam was that they bought some fraudulent have-a-business-at-home scheme? Well, the whole point of the business recovery service is to try to rescue them and to make sure that they can get some sort of recovery. How can you consider them a business and consider that a business-to-business call, even with the declarations, when their prior damage that the FTC remedied was that they bought into some scheme to have a home business that did not work? What they bought into is what the FTC calls a business opportunity in its own material. And a business opportunity, as the FTC said in, for instance, its business alert for March 2011, a business opportunity is a business. And a home business, a home Internet business is a business. The FTC drafted this regulation and said it applies to any business. Now they want to change that. And maybe that's a sensible change. And maybe they should say, well, it only applies to certain kinds of these businesses or it doesn't apply to home-based Internet businesses, doesn't apply to businesses that have web-based sites or anything like that. They can certainly qualify that in a future regulation. But we're dealing with the regulation as it's written now. And neither the FTC nor any other federal agency has the right to do an ad hoc, post hoc amendment to its regulations. It's stuck with the regulation it's got. And, in fact, the history that we provided from the Federal Register, the FTC was not comfortable with this regulation. In 2000 and 2002, 2003, they were considering changing it all and to try to narrow it because they were worried about, well, maybe this is not a good setup that we've got for these home-based businesses. But they didn't. They considered it and didn't. And they left the regulation as broad as any definitional regulation can be, any business. Now, most of these businesses are in trouble or are even defunct or the equivalent of being dissolved. But a business that is in trouble, defunct, dissolved, bankrupt in dire straits or not operating at all is still a business. And until the FTC changes its regulation, we fall within the business-to-business exemption. Now, we should have raised it earlier. In hindsight, that would have been great. Now, let me ask you that. Your position is that you were doing the same thing before the declarations were signed. You, as far as your company, seeking out business-to-business calls, as you did after the declarations were filed. The only difference is the declarations make crystal clear, as you've said several times, that the recipient of the telephone call agrees that he or she is a business. Yes, Your Honor. Yes, sir. That's what I wanted to find out. Not only clear from our perspective and my client's testimony about what they were doing and why they were doing it, but clear from the perspective of the consumer. Now, you get into court and the FTC brings in three of the hundreds and hundreds of people who had been presented with this declaration and had granted it three, and they recant, which makes you scratch your head. Well, they said they didn't understand it. Sure. Yes, Your Honor. But it was explained to them and it's there in plain English. This is not a complicated – this is not legalese or businessese or gobbledygook at all. You know, if they want to change – if they want to change what they get into court, that's fine. But what else can you do if you're trying to come within this business-to-business dimension and you provide a clear explanation and you provide a declaration and they sign it? If somebody comes into court and says, I'm backing away from that, that's just human nature and we've all seen that as judges and as lawyers. We've seen people that you talk with five minutes before they hit the witness stand and then everything's changed. I'd like to reserve the rest of my time if I could. Thank you. Good morning. May it please the Court. My name is Jessica Gender and I represent the United States. As the Court is well aware, this case involves a telemarketing sales rule which was enacted in order to protect consumers from deceptive and abusive telemarketing practices. One such practice is the recovery room scam, which is where a recovery company will contact consumers who have been victimized by telemarketing fraud and offer to help them. Ultimately, the consumer loses more money and ends up with nothing of value in return. Defendants operate one such recovery room and the United States brought this enforcement proceeding against them as a result of their misstatements to customers and their unlawful billing practices under the TSR. Defendants are now trying to wedge their conduct into this business-to-business exception, but it is tantamount to trying to put a square peg in a round hole. It just doesn't fit. No, the hole is rather large. It says any business. Now, these people were not receiving telemarketing calls not because of Facebook friends or any other social networks. They were not receiving telephone calls because of civic or religious or vacation purposes. They were receiving calls on business matters to get them to recover some money for their previous problems. Now, it was up to the FTC to draft its regulations, and as Mr. Abney pointed out quite pointedly, the regulation says any business. Now, can't I be in business? Can't you be in business on the other end of the phone? Your Honor, what defendants are trying to do here is they're trying to say that as soon as an individual makes any affirmative step towards starting a business, which I do want to say not every one of these consumers wanted to start a business. They generally say they wanted to start businesses or earn some money at home or something like that. But as soon as they take an affirmative step, for example, buying a website, buying advertising, incorporating a name, defendants would call them a business. Now, there is no black and white line here. There's no hard line where, okay, you take one affirmative step, you're a business. Under this perspective, I can stop by a bookstore on my way home and buy a book on how to start a business, and I've taken an affirmative step and I'm now a business for all these future transactions. You probably bought that book in order to improve your chances of making money. That's business. And as President Coolidge said, the business of America is business, right? But ultimately, Your Honor, you're right, but ultimately, these individuals, they take this affirmative step, but what they end up with is hot air. That affirmative step is pulled out from underneath them because they're victimized by these telemarketing frauds. Well, then you can prove that in an action that these were fraudulent calls. But why isn't the person answering the phone to BRS a business? Your Honor, at the time defendants solicit them, they have already failed. Many of these customers testified that they gave up on starting a business years in the past. General Motors failed. Was it not a business? Your Honor, for the purpose of these consumers don't even realize defendants are considering themselves to be businesses. They have no clue that this is how defendants view them or that it has any ramification at all. Let me ask you this, counsel. Let's assume that the any business exemption covers these consumers. Would that have given rise to a significant change in facts since the entry of the declaration? Your Honor, there has been we would say that there has been no change. Well, there has been a slight change in facts in that there is a declaration, but that certainly would not rise to the level of a significant change in facts. The declarations themselves cannot change what this consumer is. This consumer is an individual. As the Court noted earlier, they're being called on their personal cell phones, their home phones. They're being called while they're sitting down with their families. And they're paying for these with their personal credit cards. This is a consumer. The individuals who testified at these proceedings all testified that they've failed in their attempts to start a business. It's an individual and not a business. So how would you define what is a business under the term any business? Your Honor, we would say that you do not actually need to, well, I have two responses. The first is if we're defining the term, we believe that how the district court interpreted that term was entirely appropriate. The use of the word extant does not change the word business. When you look at definitions of business, they have terms like is carried on and things like that that show a present tense that it's actually in existence. An extant doesn't do anything but just indicate that the business should still be in existence at that time. Now, that would be an appropriate interpretation. We don't believe the district court erred in that. So a bankrupt business, a failed business that was attempting to recover from a scam artist would not be a business. Is that your position? A failed business, a business that does not exist, and actually in these cases, a business that never even started? No, no, no, no. That's two different. Let's stick to one question. Mr. Smith goes into business as a real estate broker. He gets scammed. He loses all his money. He's looking for a way to recover. Instead of going to an attorney and signing a contingency contract, he uses BRS. He's not in business? He is not in business. For purposes of the telemarketing sales rule, these individuals have been scammed and victimized, who ultimately get nothing but air, do not start businesses. But you're going to the merits of the case. I'm going as to the qualifications of what is a business and what is not a business. And what you're telling me is that a failed business that seeks to recover money from somebody who scammed it, to go back into business, is not a business under the terms any business. That is bizarre. Well, Your Honor, if you're talking specifically about somebody who apparently successfully started or got something initiated, failed, and now is trying to come back through a bankruptcy proceeding or other proceedings, that would, of course, be a business. So what you're saying is that if the person has transacted any business and then failed or has stopped transacting business for whatever reason, that is an extant business? No. No, Your Honor. I would disagree with that. For example, we might find in our case, for example, one customer maybe made a sale because his son went on his website to see if it worked. That person is not a business. These individuals, sometimes the scamming company will do things to, you know, give them a contract or give them something to kind of bulb them along. So this person may think that they actually made a sale or done something. They didn't. So making a sale, having a small amount of income, ultimately is not the line that we want to draw. If you were advising BRS and you'd say, now listen, from now on it isn't a business unless you find out, now fill in those lines, how many transactions, how long you've been in business, how many sales have you had, have you any net profits, how would you tell them what factors are required for the federal government not to come down on them? Your Honor, defendants simply cannot sell recovery kits in the manner that they've been doing. You haven't answered my question. Do you want to try answering my question? Please. Defendants cannot sell them in their form because what defendants are selling, they're selling them to individuals who are defrauded. They know that they were defrauded. They know that they failed. And so they know that these people don't have a business. What is a business? How would you – what are the factors that you say should be in the mind of BRS and be determined by BRS before they say another word to the person who's listening on the telephone? Your Honor, I don't believe that we can set a hard and fast line, and I don't think we should. They know that these consumers have failed. They know that they did not start businesses. All right. So if you failed in the business that you were in, you're not a business. If you've never started a business, you're not a business, no matter what your – whether you've incorporated or not. Right? Is that your position? For the purpose of the telemarketing sales rule – Just tell me yes or no. Your Honor. Yes. In other words, I can start – I can go and incorporate a business, but I haven't sold – I used to be in the pipe business, a piece of pipe. And I'm not a business. Although I'm incorporated, I have a board of directors, I'm looking to sell pipe, and you're telling me you're not a business because you haven't sold pipe. For the purpose of the telemarketing sales rule and recovery kits for defrauded consumers? No, Your Honor. These individuals are not businesses. All right. What is the evidence of the purpose of the Telemarketing Recovery Act? Do we have any legislative history here? There is some legislative history regarding the recovery room – excuse me, regarding  It describes how these are particularly vulnerable consumers, that recovery services have been – It describes how who are particularly vulnerable consumers. That individuals who purchase from these fraudulent telemarketing scams are particularly vulnerable and the need to protect them. Is there a definition of the business exception in the legislative history? It is discussed in the form of comments that were received complimenting it and how it protects especially vulnerable – excuse me, and how the business exception is appropriate because it would eliminate sophisticated businesses from its protections. Does it use the word sophisticated? I am almost positive it does, Your Honor, and it's cited in our brief, and I believe it does use the phrase sophisticated businesses. Right. Additionally, defense counsel comments on the rule review that happened about five years after it was enacted. And I do want to draw a distinguishing factor here. That rule review considered drawing a line between at-home businesses and brick-and-mortar businesses. It wasn't drawing a line between fraud victims who don't start businesses and at-home businesses. Those are two completely separate things that counsel is trying to kind of overlap here. Ultimately, the standard for modifying a preliminary injunction is whether or not there has been a significant change in facts or law. There was no change in the law. The only change in facts was the addition of the declaration, which consumers didn't read, didn't understand, and when given the opportunity to really look at it, they all testified that it simply wasn't true. Defendants can't change these consumers into businesses by forcing them to sign a lie. I can't make somebody sign a piece of paper saying you're now a frog and turn them into a frog. It doesn't work like that. And frankly, the only reason that defendants instituted this declaration was to try to get some sort of litigation advantage here to use to try to bind the court and bind the government. And that's just not how they can be rewarded by considering that to be a significant change in facts. What if the person on the other end of the phone says, yes, I'm a business? Are you a business? Yes. I'm asking you whether your business was in the definition by Ms. Gunder in the Ninth Circuit as to what a business is. Are you a business? Yes, I'm a business. Your Honor, I would say no. Is that enough? No, Your Honor. Further, what other questions does he have to ask? Your Honor, these individuals, some of them don't realize at first that they've been defrauded. What other questions does he have to ask? Every time I ask you a question like that, you go off into the purpose and the people and they don't really understand. You don't answer the question. What questions does he have to ask to find out if he's a business? Your Honor, I don't believe we don't believe that there are specific questions that he can ask to prove that these individuals are businesses. They are not. And there's nothing he can ask, even if the consumer doesn't realize that they've been defrauded. Even if the consumer, you know, consumers may say, yes, I started a business. They may think that they have. They might not realize they've been defrauded. Then when does the business exception apply? The business exception applies when Business Recovery Services calls a legitimate actual business. They're calling somebody that's active. They open their phone book. A legitimate, active, actual business. Is that what the regulation says or does it say any business? Your Honor, the regulation says business. And when we look at the definition, it says any business. And when we look at the definition of a business, we're looking at something that is carried on. It shows that it needs to be in existence at that time and being carried on for a profit. These individuals never got to that point. And if they did, if they gave up on those efforts long before they heard from Business Recovery Services. The regulation as a whole was intended to protect consumers from much more than recovery room scams. We've seen the evidence in this case and the FTC has seen a lot of evidence that as soon as a consumer makes the mistake of purchasing from one fraudulent telemarketer, then their name is sold. They're called sucker lists and they're sold across the industry. So these people are then bombarded with calls from other fraudulent telemarketers trying to sell them more websites, advertising, tax services, recovery services. And guess what? Defendant's interpretation would say that as soon as they take that first step, as soon as they make that first mistake and buy the first fraudulent company, they're now a business from that point forward and forevermore. And that would just eviscerate the telemarketing sales rule. It would be an absurd result, which is certainly not what the FTC contemplated and not what the plain language of this regulation indicates is appropriate. When we look at the plain language, we look at more than just the words of the specific exception. We look at the regulation as a whole. And the plain language demonstrates that. Counsel, is the FTC considering modifying its regulation to make it more explicit in any of the features that you've advocated? Not to my knowledge, Your Honor. Counsel, what is our standard of review? Your Honor, the standard of review here is to look at whether the district court abused its discretion in making these determinations on whether or not the – excuse me – abused its discretion on whether the decision was based on an erroneous legal standard or a clearly erroneous finding of fact. And, of course, any issue of the law underlying the order is reviewed de novo. I see that I'm about out of time, so I would just say that the district court issued a thorough, well-reasoned opinion and considered whether there was any change in law or fact and whether the modification was suitably tailored and determined that it was not an acid abuse. Your Honor, the standard of review for legal issues is de novo. For questions involving judgment, it's abuse of discretion. What we're saying here is that there is a legal issue that has been decided wrongly, that the definition of any business needs to be as broad as the English language allows because any is the broadest adjective that you can have in this sort of situation. The FTC knows how to rein in any business when it wants to. The regulation itself has – the exemption has – itself has an exemption for retail sales of non-durable office or cleaning supplies. So when the FTC wants to make an exemption, it sort of knows how to do it. And it could do one here. It could simply say that any business that is offering recovery services for home-based Internet businesses or the like falls within the telemarketing sales rule and just make it crystal clear that they have to abide by all the regulations of the telemarketing. Counsel, wouldn't we review for abuse of discretion the district court decision as to whether the injunction previously entered should be modified in light of the new evidence you proffered? No. And I know that may sound funny if I may explain the no. The reason is that the decision is based on a legal error. So I think you go right through the abuse of discretion standard to the underlying legal error. What is the legal error? The legal error is applying its – is the district court applying its own adjective to business, saying it's a business. No, no, no, no, no. You didn't raise a business-to-business exception for the preliminary injunction. I'm sorry. I'm sorry if I misunderstood the question. I thought it involved the modification and the reason we're here today. Well, yes, but the district court may well have determined that the modification wasn't justified because the declarations which you had presented didn't change significantly the law or the facts as they existed at the time of the preliminary injunction. Now, that would be subject to abuse of discretion review. Yes, Your Honor, except – and I hate to say exceptions in a case like this, but except for the fact that you still have to deal with the underlying legal problem. If underlying all of this, the business-to-business exemption applies broadly to any business, including to these home-based businesses, then the trial judge is on slippery ground no matter what. No, no, no. You don't have to deal with an affirmative defense which wasn't raised. I can't argue with that. But I can say that this is a very important national problem and something that I hope this Court will address now. I know we're on the knife edge procedurally. I know that for a fact, and I'm not trying to tap dance around that. I don't want to be disingenuous with anybody. But we do have a situation where we did – where from our point of view, we changed what we were doing. We made a direct inquiry. Are you a business? We explained. We have an exemption to business-to-business exception, and we can deal with you if you are a business and want you to read this declaration. And if you are a business, if you are indeed in charge of this business and you want to go forward with our transaction to get our business recovery services, then you need to sign this. And if you can't sign it, we can't do business with you. Now, we regard that as a change, and I'd like to use the adjective significant. The district court did not see it that way. But still, underneath it all, we have that business-to-business exemption. And I hope that even though we're on the knife edge, that someone will push us over onto the right side because this will come back again. I assume if our client doesn't go bankrupt and out of business himself as a result of all this procedure, we'll be back here on a direct appeal. But this is an important issue nationally. And you can see from the FTC's response here today and from the briefing that there's no definition for business. They're just plowing along and coming up with these ad hoc approach to how to do things. The citizens of the nation deserve better than that. We need to understand what the regulations are, or what you do is you wander through the thicket and you violate them without meaning to. Or you try, in good faith, to come up with a way to conduct your business, to sell a product that you have seen has been profitable for yourself and has been greatly beneficial for consumers across the nation. You're trying the best you can to keep that business going and to provide your product to people. And you come up with this declaration that actually matches a Nevada case completely by coincidence. It matched that Nevada case that we discussed in the briefing, FTC versus Publishers Business Services. What the district court suggested there is, why don't you just ask them if it's a business? Am I dealing with a business as opposed to an individual? And it worked there, and it should have worked for our declaration. Thank you very much, Mr. Abney. I apologize for that, Your Honor. No need to apologize. Thank you very much. Thank you, Mr. Abney. Thank you, Mr. Grunder. Thank you, sir. Thank you. And the case of USA versus Business Recovery Systems will be marked submitted. And we'll go to the next case on the calendar.
judges: Nelson, Gould, Bea